IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| MICHAEL C. GREENSPON,<br><br>Plaintiff,<br><br>vs.<br><br>AIG SPECIALTY INSURANCE COMPANY, *et al.*,<br><br>Defendants. | CASE NO. 18-CV-00448-DKW-WRP<br><br>**ORDER (1) DENYING PLAINTIFF'S AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT, (2) GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT RE: INSURANCE COVERAGE, (3) REJECTING PLAINTIFF'S OBJECTION TO THE MAGISTRATE JUDGE'S ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO AMEND; AND (4) DENYING AS MOOT VARIOUS OTHER MOTIONS** |

## INTRODUCTION

Both Plaintiff Greenspon and Defendant AIG Specialty Insurance Company (AIG or Defendant) move for summary judgment on whether an insurance policy issued by AIG covers claims that Greenspon brought against AIG's insured, Prommis Solutions Holding Corp. (Prommis Solutions). Four documents are particularly relevant to this dispute: (1) Greenspon's 2011 Complaint against a subsidiary of Prommis Solutions, Cal-Western Reconveyance Corporation (Cal-Western); (2) Greenspon's 2014 Complaint against Prommis Holdings, LLC and Cal-Western; (3) the Final Judgment and Order entered in Greenspon's 2014

lawsuit; and (4) the insurance policy.   Together, these documents demonstrate that AIG is entitled to summary judgment on the issue of coverage because Greenspon's claims against Prommis Solutions were "first made" outside of the relevant policy period.   Moreover, even if some of Greenspon's claims were "first made" *during* the relevant policy period, the Final Judgment and Order do not show which (if any) of the damages awarded to Greenspon are traceable to those claims and, thus, Greenspon has failed to meet his burden to establish coverage.   In addition, as explained below, because Greenspon is not entitled to amend his complaint, the Court rejects his objection to the Magistrate Judge's order denying leave to amend. Finally, in light of the Court's findings herein, various other motions are rendered moot, as set forth below.

## RELEVANT FACTUAL BACKGROUND

### 1.   Greenspon's 2011 Lawsuit

On January 26, 2011, Greenspon, through counsel, filed a Complaint in State court against, *inter alia*, Cal-Western (2011 Complaint).   1/26/11 Compl., Dkt. No. 111-3.   Therein, Greenspon alleged that he obtained a loan on real property in the amount of $650,000 from Indymac Bank.   Thereafter, the amount of the loan was increased to $800,000.   In 2008, Indymac Bank was closed by the Federal Deposit Insurance Corporation (FDIC), and Indymac Federal Bank took over control of Indymac Bank's assets.   Greenspon then received a letter from Indymac Federal

Bank demanding payment to cure an alleged default on the loan.   Thereafter, Indymac Bank attempted to assign the mortgage on Greenspon's property to Indymac Federal Bank.   In addition, Indymac Federal Bank executed a notice of intent to foreclose on Greenspon's property.   In 2009, Indymac Federal Bank was sold to Onewest Bank (Onewest).   However, none of the documents related to the foreclosure sale of Greenspon's property named Onewest as the holder of the mortgage.   In March 2010, a "Mortgagee's Affidavit of Foreclosure Sale Under Power of Sale" was executed by Cal-Western on behalf of the FDIC as the mortgagee and receiver for Indymac Federal Bank.   In May 2010, a "Mortgagee's Grant Deed Pursuant to Power of Sale" resulted in the FDIC, as receiver for Indymac Bank, granting Greenspon's property to Deutsche Bank National Trust Company, as trustee of a certain trust (DB).   In the 2011 Complaint, Greenspon asserted claims to, *inter alia*, quiet title, alleging that the foreclosure of his property and the transfer of title to DB were procured by fraud and should be set aside.

On June 21, 2011, Greenspon, through counsel, filed a First Amended Complaint (2011 FAC), again naming Cal-Western, among others, and seeking injunctive relief and damages.   6/21/11 Compl., Dkt. No. 81-19.   In relevant part, the factual allegations in the 2011 FAC largely mirrored those in the 2011 Complaint, and Greenspon again premised his claim to quiet title on the foreclosure and transfer of title to DB being procured by fraud.

Many years later, on March 21, 2018, Greenspon, pro se, filed a Second Amended Complaint (SAC) in the lawsuit he began in 2011.   3/21/18 Compl., Dkt. No. 125-9.   The SAC does not name Cal-Western as a defendant.

As far as the record in this case shows, the 2011 lawsuit is still pending. AIG's Concise Statement of Facts in Support of its Motion for Summary Judgment (AIG CSF) at ¶ 20, Dkt. No. 125.

## 2.   Greenspon's 2014 Lawsuit

On January 10, 2014, Greenspon, pro se, filed a Complaint against, *inter alia*, Prommis Holdings, LLC (2014 Complaint).   1/10/14 Compl., Dkt. No. 125-10. On July 1, 2014, Greenspon filed a First Amended Complaint, adding Cal-Western as a defendant (2014 FAC).   7/1/14 Compl., Dkt. No. 81-11.   In the 2014 FAC, Greenspon alleged that he obtained a loan on real property in the amount of $650,000 from Indymac Bank.   During the loan process, although Indymac Bank's loan officer represented that the loan rate would be 5.5%, the rate ended up being 6.75%.   Indymac Bank also failed to disburse funds on time, overcharged Greenspon, and made him accept a pre-payment penalty.   After Indymac Bank was seized by the FDIC, some of its assets were sold to Onewest, while other assets, including Greenspon's loan, were retained by the FDIC.   In June 2008, Indymac Bank and Greenspon agreed to a modification of the loan, but Indymac Federal Bank subsequently repudiated it and accelerated the mortgage.   In January 2009, a

"Notice of Mortgagee's Intention to Foreclose Under Power of Sale" was executed, thereby initiating a "wrongful foreclosure" on Greenspon's property.   In February 2009, Indymac Bank assigned the mortgage to Indymac Federal Bank.   In March 2010, a "Mortgagee's Affidavit of Foreclosure Sale Under Power of Sale" was recorded with respect to Greenspon's property.   In May 2010, a "Mortgagee's Grant Deed Pursuant to Power of Sale" was recorded, with the grantor being named as the FDIC as receiver for Indymac Bank and the grantee as DB.   The mortgagee's affidavit stated that DB was the only bidder for Greenspon's property.   However, according to Greenspon, the FDIC, as receiver for Indymac Federal Bank, was the bidder on the property.

In the notice of foreclosure sale, the sale date was specified as June 19, 2009. The sale, however, did not occur on June 19, 2009, and no other notice of sale was ever published.   In all, the sale was postponed six times, but on no occasion was a notice published containing the postponed dates.   The sale, instead, took place on February 26, 2010.   The effect of postponing the sale was to prevent bidders, including Greenspon, from attending the ultimate sale.   At the ultimate sale, the only bidder was the mortgagee, who made a bid far less than the market value of Greenspon's property.   Postponement of the sale also caused Greenspon months of sleeplessness and headaches, as well as a sense of hopelessness that he could bid for his property.

In the 2014 FAC, Greenspon asserted five claims and also sought punitive damages.   In Greenspon's claims, he asserted that Prommis Holdings and Cal-Western "fabricated" the "Notice of Mortgagee's Intention to Foreclose Under Power of Sale," "wrongfully" initiated foreclosure on his property, carried out a deceptive "mock" auction of the property, failed to publish a notice containing the actual date and time of the sale of his property, "bull[ied]" him in order to inhibit his participation at the auction of the property, "fabricated" the "Mortgagee's Affidavit of Foreclosure Sale Under Power of Sale," "forged" the "Mortgagee's Grant Deed Pursuant to Power of Sale," "wrongfully" clouded title to his property, "wrongfully" brought an ejectment action against him, and "wrongfully" enforced the mortgage on his property.   Greenspon sought compensatory damages for, *inter alia*, alleged losses to his equity in the property, to his wages, and in litigating "wrongful" actions.   Greenspon also sought punitive damages related to alleged unfair practices and the "wrongful[]" conversion of his property.

### 3.   The Final Judgment in Greenspon's 2014 Lawsuit

On March 14, 2018, the State court entered a Final Judgment in favor of Greenspon and against Prommis Holdings, Cal-Western, and Prommis Solutions with respect to all claims in the 2014 FAC.[1]   3/14/18 Final Judgment, Dkt. No. 81-3

---

[1]Although it is not perfectly clear, it appears that Prommis Solutions was added as a defendant to the 2014 lawsuit in March 2017.   *See* 3/14/18 Order Granting Plaintiff's Motion for Entry of Default Judgment at 2 (¶ 6), Dkt. No. 81-3.

at 1-2.   Damages were awarded to Greenspon in the amount of $36,382,302, costs in the amount of $55,500, and punitive damages in the amount of $10,000 per defendant.   In connection with the Final Judgment, the State court also entered an Order granting Greenspon's motion for entry of default judgment (2018 Order). 3/14/18 Order Granting Plaintiff's Motion for Entry of Default Judgment, Dkt. No. 81-3 at 3-42.[2]

The 2018 Order made the following pertinent factual findings.   In March 2003, Greenspon obtained a $650,000 construction loan from Indymac Bank in order to construct a residence on his property in Haiku, Maui.   Indymac Bank's servicing and disbursement processes resulted in substantial compounded delays and increased costs to Greenspon.   In June 2008, Indymac Bank offered a loan modification and forbearance agreement that Greenspon accepted.   In July 2008, Indymac Bank failed, and its assets were transferred to Indymac Federal Bank. Greenspon's loan modification was not implemented by Indymac Federal Bank, but, instead, it was repudiated and payment of the loan was wrongfully demanded and improperly accelerated.   In December 2008, Indymac Bank referred Greenspon's account to Cal-Western for non-judicial foreclosure.   On January 26, 2009, a "Notice of Mortgagee's Intention to Foreclose Under Power of Sale" was made by Indymac Federal Bank.   In March 2009, although the FDIC sold the bulk of

---

[2]When citing to the 2018 Order, the Court refers to the page numbers assigned thereto by the CM/ECF ribbon at the top of each page.   For example, "Page 3 of 42."

Indymac Federal Bank's assets to Onewest, the FDIC placed into receivership other assets, including Greenspon's loan.

A sale notice, advertising a sale date of June 19, 2009, was published on May 22, May 29, and June 5, 2009.   However, Greenspon did not receive notice of the sale until June 24, 2009.   Cal-Western subsequently postponed the foreclosure sale on six occasions, but did not republish notice of the postponed sale dates or of the actual sale date on February 26, 2010.   Due to the postponements, Greenspon became discouraged that he would have an opportunity to bid on his property and suffered extreme distress as to when or whether his property would be auctioned. On February 26, 2010, Greenspon's property was sold to the mortgagee because no higher bid than the mortgagee's bid of $881,494.06 was received.   On March 12, 2010, a Cal-Western officer, Lorrie Womack (Womack) executed a "Mortgagee's Affidavit of Sale Under Power of Sale," in which Womack stated that she was authorized to act on behalf of the FDIC as receiver for Indymac Federal Bank. Womack, however, had not been appointed as an attorney-in-fact for the FDIC, and Cal-Western did not have a power of attorney with respect to the FDIC.   The affidavit of sale stated that DB was the highest bidder at the February 26, 2010 foreclosure sale.   DB, however, admitted that it had never acquired any rights in the mortgage on Greenspon's property.   Instead, Indymac Federal Bank was the

highest bidder at the sale, and Indymac Federal Bank designated DB to take title to the property.

At some time between February 26, 2010 and April 13, 2010, a Onewest employee, Erica Johnson-Seck, executed a "Mortgagee's Grant Deed Pursuant to Power of Sale" for the FDIC as receiver for Indymac Bank.   On May 7, 2010, the deed was recorded in Hawai'i.   On June 29, 2010, Greenspon was served with a notice to vacate, which caused him to suffer extreme distress with physically manifested symptoms for which medical care was sought.   Greenspon contested the notice to vacate and, in July 2010, Onewest filed a complaint for ejectment in State court.   On March 3, 2011, the State court dismissed the ejectment action on jurisdictional grounds, finding that title to Greenspon's property was in dispute. During this time, a real estate agent for Onewest trespassed on the property and harassed the occupants of Greenspon's home.

On June 21, 2011, Greenspon filed the 2011 FAC and subsequently served it upon Cal-Western.   In July 2011, Cal-Western's legal department acknowledged that it did not have a power of attorney from the FDIC.   On September 6, 2011, the FDIC as receiver for Indymac Federal Bank entered into a settlement with Greenspon, agreeing not to assert any interest in his property.   On June 19, 2012, an employee of Onewest executed an "Amended Mortgagee's Grant Deed Pursuant to Power of Sale," purporting to transfer title to Greenspon's property from the FDIC

to DB.   In September 2012, Onewest listed the property for sale at the price of $793,000, even though Greenspon estimated the value at $1.5 million.   On October 5, 2012, an employee of Onewest, Mike Stanford (Stanford), executed on behalf of Onewest, as attorney-in-fact for the FDIC, a limited power of attorney appointing Cal-Western as the FDIC's attorney-in-fact.   On the same day, Stanford executed another "Amended Mortgagee's Grant Deed Pursuant to Power of Sale."   On March 13, 2013, in the 2011 lawsuit, the State court granted motions for summary judgment, awarding a writ of possession for Greenspon's property to DB, which Greenspon appealed.   On June 14, 2016, a State appellate court found that the October 5, 2012 "Amended Mortgagee's Grant Deed Pursuant to Power of Sale" was insufficient to prove that the sale of Greenspon's property was fairly conducted.

The 2018 Order made the following pertinent conclusions of law.   All of the defendants were in default with respect to the 2014 FAC.   The 2014 FAC stated a claim for wrongful foreclosure based upon Indymac Bank's repudiation of the loan modification and Cal-Western's conduct during the foreclosure sale. Cal-Western's failure to publish postponement notices and a notice of the actual sale date constituted violations of its duties to use fair means to obtain the best price for Greenspon's property, resulting in a loss to Greenspon's investment in the same. Cal-Western's failures in this regard meant that a bona fide auction was not held. The FDIC did not ratify the wrongful acts committed by Cal-Western, and the FDIC

did not confer any of its authority to Cal-Western.   Cal-Western breached duties of care and loyalty in conducting the foreclosure of Greenspon's property.   Further, Cal-Western misrepresented that it had a power of attorney from the FDIC. Further, Cal-Western's failure to publish notices of postponement and the actual sale date constituted unfair and deceptive acts and practices under Hawai'i law. Cal-Western's misrepresentation that Greenspon's property was sold to DB, while concealing that the FDIC as receiver for Indymac Federal Bank was the highest bidder for the property, also constituted a deceptive act or practice under Hawai'i law.

Compensatory damages were available for Greenspon's claims. Cal-Western's "wrongful foreclosure" resulted in damages of: $2,777,084 in lost opportunity to develop other projects; $868,141 in lost rent; $333,182 in increased maintenance costs and lost depreciation benefits; $707,000 due to slander of title; $66,200 in attorney's fees; $350,312 in lost use of working capital; $2,364,257 in lost wages; $1,112,592 in lost future earnings; and $3 million in a lost business opportunity.   Greenspon was entitled to damages for serious emotional distress in the amount of: $2,000 for medical expenses; $548,000 for distress; $548,000 for loss of enjoyment of life; and $548,000 for personal and professional reputational harm. From the time the first notice of sale was published on May 22, 2009 through the recording of the "Mortgagee's Grant Deed Pursuant to Power of Sale" on May 7,

2010, Cal-Western's "entire non-judicial foreclosure process" was considered an unfair and deceptive act or practice under Hawai'i law.   Greenspon was, therefore, entitled to treble damages, meaning that, because his economic damages totaled $11,578,767, he was entitled to treble damages of $34,736,302 and costs of $55,500. Greenspon was not awarded "overlapping" damages on his claims, as Cal-Western's misrepresentations with respect to the sale notice and the "Mortgagee's Affidavit of Foreclosure Sale Under Power of Sale" were "subsumed" in the awards for wrongful foreclosure and unfair and deceptive practices.   Greenspon was, however, also entitled to $10,000 in punitive damages from each defendant due to their "calculated" acts to dispossess Greenspon.

**4.    The Insurance Policy**

Effective from June 12, 2012 to June 12, 2018, AIG Specialty Insurance Company[3]  issued Directors & Officers Liability Insurance, Employment Practices Liability Insurance, Fiduciary Liability Insurance to Prommis Solutions (Insurance Policy).   Dkt. No. 111-2 at 5-119.[4]   The relevant provisions of the Insurance Policy are as follows.

The Insurance Policy provides coverage "with respect to Claims first made during the Policy Period…and reported to the Insurer pursuant to the terms of this

---

[3]AIG was formerly known as Chartis Specialty Insurance Company, which is the named issuer of the Insurance Policy.
[4]When citing to the Insurance Policy, the Court refers to the page numbers assigned thereto by the CM/ECF ribbon at the top of each page.   For example, "Page 119 of 121."

policy…." *Id*. at 28.   In so covering, the Insurance Policy provides that AIG will

pay the "Loss" of Prommis Solutions arising from a "Claim" made against Prommis

Solutions or its subsidiaries "for any Wrongful Act…."   *Id*.   The Insurance Policy

defines "Loss" as, *inter alia*, damages and judgments.   *Id*. at 31.   The term "Claim"

is defined as including, *inter alia*, any civil proceeding for monetary or

non-monetary relief commenced by service of a complaint.   *Id*. at 10.   The term

"Policy Period" is defined as meaning the period of time from June 12, 2012 to the

earlier of June 12, 2018 or the cancellation of the Insurance Policy.   *Id*. at 6, 15.

Finally, the term "Wrongful Act" is defined as meaning, *inter alia*, "any actual or

alleged act, breach of duty, neglect, error, statement, misstatement, misleading

statement, or omission" by Prommis Solutions or its subsidiaries.   *Id*. at 33-34.

## <u>RELEVANT PROCEDURAL BACKGROUND</u>

On November 19, 2018, AIG removed this action from State court, after the

filing of a Complaint by Greenspon (2018 Complaint).   Dkt. No. 1.   In the 2018

Complaint, Greenspon sought, *inter alia*, a declaration that the Insurance Policy

provided coverage for the Final Judgment in his 2014 lawsuit and, thus, AIG was

obligated to pay the limits of the Insurance Policy to satisfy said judgment.

On November 11, 2019, Greenspon moved for partial summary judgment as

to coverage under the Insurance Policy of the damages awarded by the Final

Judgment (Greenspon's motion).   Dkt. No. 84.[5]   On January 24, 2020, AIG filed

both an opposition to Greenspon's motion and a motion to deny or defer ruling on

the same (motion to defer).   Dkt. Nos. 110, 112.   Thereafter, on February 12, 2020,

AIG filed two separate motions for summary judgment: one with respect to coverage

under the Insurance Policy (AIG's first motion), Dkt. No. 124, and one with respect

to the "Frow doctrine" (AIG's second motion), Dkt. No. 126.   More than two weeks

later, Greenspon filed oppositions to both of AIG's motions for summary judgment.

Dkt. No. 133-1 at 1-23; Dkt. No. 135.[6]

Greenspon has also filed a motion for leave to amend the 2018 Complaint

(motion to amend).   Dkt. No. 90.   Therein, Greenspon seeks leave to add various

claims against AIG, Prommis Solutions, and American International Group, Inc.,

including claims for bad faith, unfair and deceptive acts or practices, intentional

infliction of emotional distress, and assignment.   After briefing, the assigned

---

[5]In his motion, Greenspon sought only partial summary judgment because he wished to leave the
amount to which he was entitled under the Insurance Policy until trial or subsequent motion.
[6]Because the Court decided to rule on AIG's motions for summary judgment without a hearing,
Dkt. No. 128, pursuant to Local Rule 7.2, Greenspon's oppositions were due on or before February
26, 2020.   Greenspon's oppositions, however, were filed on February 27 and February 28, 2020.
Dkt. Nos. 133, 135.   Nonetheless, Greenspon also filed a motion for extension of time to file his
oppositions.   Dkt. No. 136.   In light of the representations in Greenspon's supporting
declaration, Dkt. No. 136-1, the Court GRANTS the motion for extension of time and will
consider Greenspon's oppositions as if timely filed.

Magistrate Judge denied the motion to amend.   Dkt. No. 123.   Greenspon has filed a timely objection to the Magistrate Judge's ruling.   Dkt. No. 131.[7]

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   The moving party is entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of a claim in the case on which the non-moving party has the burden of proof.   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).   In contrast, when the moving party bears the burden of proof, "it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted…."   *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992).   This means that the movant "must establish beyond controversy every essential element" of its claims.   *See S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003) (quotation omitted).   In assessing a motion for summary judgment, all facts are construed in the light most favorable to the non-moving party.   *Genzler v. Longanbach*, 410 F.3d 630, 636 (9th Cir. 2005).

---

[7]The following motions are also currently pending before the assigned Magistrate Judge: (1) AIG's motion to compel, Dkt. No. 91; and (2) AIG's motion to continue trial and related deadlines, Dkt. No. 105.

## DISCUSSION

The success of the 2018 Complaint rises and falls with whether the Insurance Policy provides coverage for the damages awarded by the Final Judgment.   In other words, *this case*, unlike the several others in which the parties are engaged at the state court level, involves an insurance coverage dispute.   Thus, the Court starts its analysis with the parties' competing motions for summary judgment as to coverage. As discussed below, because Greenspon has failed to meet his burden to show coverage, the Court's analysis also ends on this subject.

## I.    Greenspon's Burden

Ordinarily, "the insured has the burden to prove that a loss is covered under the terms of the insurance policy."   *Sentinel Ins. Co., Ltd. v. First Ins. Co. of Hawaii, Ltd.*, 875 P.2d 894, 909 n.13 (Haw. 1994).   Greenspon, however, appears to argue that, here, AIG, the insurer, must overcome a presumption of coverage because it breached a duty to defend.[8]   Dkt. No. 84-1 at 12-13.   That is incorrect.

First, Greenspon has failed to show that AIG had a duty to defend its insured. As the Hawaiʻi Supreme Court has explained, the duty to defend "is purely contractual and depends, in the first instance, on the language of the particular policy involved."   *Dairy Road Partners v. Island Ins. Co., Ltd.*, 992 P.2d 93, 108 (Haw.

---

[8]The Court notes that, in discussing coverage in Greenspon's motion, Greenspon argues that his argument "meets movant's burden on this Motion, and AIG must prove any claimed exclusion." Dkt. No. 84-1 at 18.   Nonetheless, the Court construes Greenspon as arguing that AIG must overcome a presumption of coverage.

2000) (quotation and internal quotation omitted).   Here, the Insurance Policy

provides that AIG "does not assume any duty to defend."   Dkt. No. 111-2 at 29, 45;

*cf*. *Dairy Road*, 992 P.2d at 108 (explaining that the insurer contracted to defend its

insured against "any suit asking for" damages arising out of certain accidents).

Second, even if Greenspon had shown that some duty existed in this regard, he has

failed to explain how AIG breached that duty.   Rather, his arguments appear to

simply assume that a breach occurred, without any explanation as to why.   *See* Dkt.

No. 84-1 at 12-13, 15-18; Dkt. No. 116 at 14-15.[9]   Third, even had AIG breached a

duty to defend, such a duty is generally broader than any indemnity obligation

arising out of the same policy.   *Nautilus Ins. Co. v. Lexington Ins. Co.*, 321 P.3d

634, 640 (Haw. 2014).   Why a breach of the former would therefore lead to a

finding of coverage is unclear and is certainly never explained by Greenspon.

Moreover, contrary to Greenspon's apparent contention, merely because he obtained

the Final Judgment in the 2014 lawsuit does not mean that the same is "res judicata"

as to any matter relevant with respect to which party has the burden to show

coverage.   *See* Dkt. No. 116 at 14-15.   Instead, as Greenspon appears to

---

[9]In his reply, Greenspon asserts that AIG "refused to advance" defense costs.   Dkt. No. 116 at 15.
To the extent this is meant to be an explanation of how AIG purportedly breached some duty to its
insured, Greenspon cites no evidence for the contention that AIG failed to advance defense costs
or even that the insured either incurred defense costs or submitted invoices for defense costs to
AIG, as the Insurance Policy requires.   *See* Dkt. No. 111-2 at 45 ("The Insurer shall advance
Defense Costs on a current basis and, in any event, no later than sixty (60) days after receipt of
invoices of such Defense Costs.").

acknowledge, at most, the Final Judgment is relevant to *Prommis Solutions'* underlying liability in the 2014 lawsuit.   *See id*. at 15.

As a result, the Court finds that it is Greenspon's burden to show that coverage exists here.

## II.   <u>Greenspon Has Failed to Meet His Burden to Show Coverage</u>

As set forth above, the Insurance Policy provides coverage for claims first made during the policy period.   Here, the parties dispute whether a claim was first made during the policy period.   More specifically, AIG argues that Greenspon made his claim for wrongful foreclosure more than a year before the Insurance Policy began in June 2012 when he asserted that claim in his *2011* lawsuit.   Dkt. No. 124-1 at 12-16.   Greenspon, meanwhile, argues that the claims asserted in the *2014* lawsuit for negligent auction conduct and breach of duty were first made during the period of the Insurance Policy, which extended until June 2018.   Dkt. No. 84-1 at 15-18.   The Court agrees with AIG.

As an initial matter, the foregoing dispute requires both an understanding of the term "Claim" under the Insurance Policy and the nature of the claims brought in the 2011 and 2014 lawsuits.   As stated above, under the Insurance Policy, the term "Claim" means, in pertinent part, any civil proceeding for monetary or non-monetary relief that is commenced by service of a complaint.   The 2011 and 2014 lawsuits, both of which are civil proceedings for monetary and/or

non-monetary relief commenced by service of a complaint, are therefore Claims under the Insurance Policy.   The next question is, thus, when were those Claims first made.

The answer can be found in the nature of the two lawsuits.   Specifically, both lawsuits are premised upon the alleged wrongful foreclosure of Greenspon's property.   That much is evident in the allegations made and claims brought in both lawsuits, as well as in the parties' briefing here.   As for the 2011 lawsuit, the 2011 FAC demonstrates the nature of the lawsuit: to quiet title due to an alleged wrongful foreclosure of Greenspon's property.   6/20/11 Compl. at ¶¶ 41-44.   The 2014 lawsuit is likewise premised upon the alleged wrongful foreclosure of Greenspon's property.   Notably, each one of Greenspon's claims therein relies upon Cal-Western and/or Prommis Holdings' alleged conduct in wrongfully foreclosing Greenspon's property.   This is true whether it be Greenspon's claim that Cal-Western and/or Prommis Holdings made misrepresentations, *see, e.g.*, 7/1/14 Compl. at ¶ 103, his claim that Cal-Western and/or Prommis Holdings committed unfair and deceptive acts, *see, e.g.*, *id*. at ¶ 120, his claim that Cal-Western and/or Prommis Holdings negligently or intentionally inflicted emotional distress, *see, e.g.*, *id*. at ¶¶ 128-129, his claim that Cal-Western and/or Prommis Holdings breached fiduciary duties, *see, e.g.*, *id*. at ¶¶ 137-139, or his claim that Cal-Western and/or Prommis Holdings conspired with other entities, *see, e.g.*, *id*. at ¶¶ 142-143.   Put

19

simply, the civil proceeding commenced by service of a complaint alleging wrongful foreclosure was *first made* in the 2011 lawsuit, irrespective of it also being made in the 2014 lawsuit.

Greenspon's arguments to the contrary are unavailing, as none of the cases to which he cites are applicable here.   *See* Dkt. No. 84-1 at 16-17; Dkt. No. 116 at 3-4; Dkt. No. 133-1 at 6-10.   First, *Home Ins. Co. of Illinois (New Hampshire) v. Spectrum Info. Technologies, Inc.*, 930 F. Supp. 825 (E.D.N.Y. 1996), is not "on point."   *See* Dkt. No. 116 at 3.   Notably, in that case, multiple lawsuits were brought by multiple classes of shareholders alleging multiple distinct violations of securities laws occurring over different periods of time.   *Home Ins.*, 930 F. Supp. at 829, 831-833.   That is not the situation here.   In addition, the term "Claim" was materially different.   *See id*. at 846-847 (explaining that "claim" in that case was defined as "a written demand by a third party for monetary damages, *including* the institution of suit or a demand for arbitration.") (emphasis in original).[10]   Second, Greenspon fails to explain how the holding in *Nat'l Union Fire Ins. Co. v. Lynette C.*, 33 Cal. Rptr. 2d 496 (Cal. Ct. App. 1994), is relevant here.   Instead, he simply states his interpretation of the holding.   *See* Dkt. No. 116 at 4; Dkt. No. 133-1 at

---

[10]Greenspon's reliance on *St. Paul Fire & Marine Ins. Co. v. Hawaiian Ins. & Guaranty Co.* is also unhelpful here, not the least because the term "claim" was not defined by the relevant insurance policy.   637 P.2d 1146, 1147 (Haw. App. 1981).

10.[11]   Finally, this Court's decision in *Hamilton v. Foreclosure Expeditors/Initiators, LLC*, 2017 WL 5761598 (D. Haw. Nov. 28, 2017), is not "apropos and instructive."   *See* Dkt. No. 133-1 at 13.   Greenspon asserts that "*Hamilton* stands for the proposition that multiple UDAP [unfair or deceptive acts and practices] claims–each based on allegations of specific misrepresentations or improper auction conduct–are distinguishable from a generic 'wrongful foreclosure' claim relied on by AIG."   *Id*. at 14.   Greenspon entirely misconstrues *Hamilton*, which was authored by the undersigned.   In *Hamilton*, the Court found that, although the plaintiffs could not bring a cause of action for wrongful foreclosure against agents of a mortgagee, they had sufficiently alleged a cause of action for statutory unfair or deceptive acts and practices.   2017 WL 5761598, at *4-12. Greenspon appears to believe dkt this means that causes of action for wrongful foreclosure and unfair and deceptive acts or practices are claims that must be treated distinctly and separately from each other, such that one may be brought at a different time to the other, such as one in 2011 and one in 2014.   Perhaps, under other circumstances, that may be true, but here it is not.   As discussed above, Greenspon's claims in the 2014 lawsuit are not distinct and separate from his claims

---

[11]To the extent Greenspon believes that *Nat'l Union* is relevant because, as he contends, in that case there was "an ongoing series of acts of negligence that allowed a series of harms across policy periods to continue unabated," Dkt. No. 116 at 4 (emphasis omitted), the Court observes that the acts in *Nat'l Union* were sexual molestation of a foster child by a foster parent from October or November 1980 until May 1983.   33 Cal. Rptr. 2d at 497-498.   That is not the situation here.

in the 2011 lawsuit: they <u>all</u> concern the alleged wrongful foreclosure of his property.   Greenspon's attempt to contend that one or other alleged acts in his 2014 lawsuit were not alleged in the 2011 lawsuit misses the mark: all alleged acts concern the wrongful foreclosure of his property.

As a result, the Court finds that the claims in the 2014 lawsuit were first made in 2011.   This finding dooms Greenspon's motion for partial summary judgment, while doing the opposite for AIG's first motion, because the Insurance Policy did not begin until 2012.   In other words, the claims in the 2014 lawsuit were not first made during the "Policy Period," and, thus, the Insurance Policy does not provide coverage for any losses resulting from the same.[12]

Alternatively, even if Greenspon was able to show that some of the acts alleged in the 2014 lawsuit constituted claims that were first made during the period

---

[12]The Court notes that the cases to which AIG cites are not entirely helpful either, whether factually or legally, with respect to when Greenspon's claims were first made.   For example, in *Eastwood Ins. Services, Inc. v. U.S. Specialty Ins. Co.*, 2008 WL 11342540, at *1-2 (C.D. Cal. Nov. 4, 2008), the insurance policies contained an "interrelated claim" provision requiring claims arising from the same or a series of related facts to be grouped together into a single claim and considered made at the time the earliest such claim was made.   AIG points to no such similar provision in the Insurance Policy.   *See also Westrec Marina Mgmt., Inc. Arrowood Indem. Co.*, 78 Cal. Rptr. 3d 264, 266 & n.1 (Cal. Ct. App. 2008) (involving an insurance policy defining a single "claim" as including all claims arising from the same events or series of related facts); *Johnson v. JPMorgan Chase & Co.*, 695 F. App'x 218, 219-220 (9th Cir. Aug. 10, 2017) (affirming finding that a lawsuit was barred by res judicata under California's "primary rights" theory); *Manufactured Home Communities Inc. v. City of San Jose*, 420 F.3d 1022, 1031-32 (9th Cir. 2005) (same); *Maxwell v. U.S. Bank Nat'l Ass'n*, 2013 WL 265975, at *4-6 (S.D. Tex. Jan. 4, 2013) (involving whether claims from multiple lawsuits were barred by res judicata); *cf. Heydar v. Westport Ins. Corp.*, 158 F. App'x 774, 775-776 (9th Cir. Nov. 29, 2005) (concluding that a claim was not first made within the relevant policy period, but not stating how the term "claim" was defined under the policy).   Nonetheless, as discussed herein, the Court agrees that the claims in the 2014 lawsuit were first made in 2011, before the Insurance Policy began.

of the Insurance Policy, his request for partial summary judgment would suffer from at least one other fatal flaw.

At best, Greenspon's argument that he first made claims in 2014 only stretches to *some* of the claims he made in the 2014 lawsuit.   Notably, Greenspon asserts that his demand on the Insurance Policy "is based on a subset of the damages awarded by the Final Judgment that are not specifically excluded[,]" identifying claims of "negligent auction conduct" and "breach of duties" that he contends were first made in 2014.   Dkt. No. 84-1 at 15-16 (emphasis omitted).

There is a good reason why Greenspon does not attempt to argue that *all* of the claims in the 2014 lawsuit were first made in 2014 – because he cannot.   As discussed, that much is evident from even a brief review of the two lawsuits.   First, the premise of the 2011 lawsuit is alleged fraud in the creation, execution, and transfer of various documents, such as a "Notice of Mortgagee's Intention to Foreclose Under Power of Sale" and a "Mortgagee's Affidavit of Foreclosure Sale Under Power of Sale," related to the foreclosure of Greenspon's property.   *See, e.g.*, 6/21/11 Compl. at ¶¶ 15-16, 18-19, 24-29, 41-42.   Second, the 2014 lawsuit similarly alleges that the same foreclosure-related documents were fraudulent and constituted misrepresentations, unfair and deceptive acts, the infliction of emotional distress, and the breach of fiduciary duties.   *See, e.g.*, 7/1/14 Compl. at ¶¶ 9, 11-12, 14, 42-51, 102-103, 107-112, 120-122, 129, 139, 146-148, 154.

In other words, even Greenspon *must concede* that at least some of the claims raised in the 2014 lawsuit were first made in the 2011 lawsuit.   In the context of the Insurance Policy and coverage thereunder, this means that, at best from Plaintiff's perspective, at least some of the claims raised in the 2014 lawsuit cannot be covered because they were not first made during the Policy Period, while, arguably, other claims may be covered.   In this situation, however, it remains Greenspon's burden to show coverage.   *See Sentinel Ins.*, 875 P.2d at 909 n.13; *Pancakes of Hawaii, Inc. v. Pomare Properties Corp.*, 944 P.2d 83, 89 (Haw. Ct. App. 1997) ("Once the trier of fact makes a determination on the claims in the lawsuit, the duty to indemnify will either arise or lie dormant. Claims falling within the indemnity provision will trigger the duty to indemnify, while claims falling outside the provision will relieve the indemnitor of his or her duty to indemnify."); *Royal Hawaiian Sales Co. v. Home Ins. Co. of Haw., Ltd.*, 27 Haw. 333, 335 (1923) (explaining that the liability of an insurer is limited to the amount of damages caused by a risk covered by the insurance policy); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Puget Plastics Corp.*, 649 F. Supp. 2d 613, 650 (S.D. Tex. 2009) ("Since the insured bears the burden on coverage, when there are covered and non-covered perils, the insured must present evidence upon which the fact-finder on coverage can allocate and segregate covered losses from non-covered losses.").   To meet this burden, therefore, Greenspon must show that Prommis Solutions' loss, *i.e.*, the damages

awarded in the 2018 Order, flow from covered claims.[13]   Here, review of the 2018

Order reflects that Greenspon cannot make this showing.

First, numerous types of damages are listed under a heading for "Wrongful

Foreclosure."   *See* Dkt. No. 81-3 at 36-37.   These damages total $11,578,768.00.[14]

As discussed above, wrongful foreclosure is the premise of the 2011 lawsuit.   *See*

6/21/11 Compl. at ¶¶ 41-44.   Moreover, not even Greenspon contends that his claim

for wrongful foreclosure was first made in 2014; rather, he focuses upon claims of

negligent auction conduct and breach of duties as having been first made then.   *See*

Dkt. No. 84-1 at 16.   In any event, the 2011 lawsuit itself is clear evidence that the

claim for wrongful foreclosure was made at that time.

Second, as damages for unfair and deceptive acts or practices, the 2018 Order

states that Greenspon was entitled to the greater of $1,000 or threefold damages, and

further stated that "Plaintiff's damages sustained are the sum total of the damages

sustained for wrongful foreclosure[.]"   Dkt. No. 81-3 at 38-39.   In other words,

Greenspon was entitled to three times the damages he sustained for wrongful

---

[13]The Court adds that placing this burden on Greenspon makes particular sense in the context here, given that the 2018 Order granted *Greenspon's* motion for entry of default judgment.   *Cf. United Nat'l Ins. Co. v. Indian Harbor Ins. Co.*, 160 F. Supp. 3d 828, 839 (E.D.Pa. 2016) (explaining that allocating between covered and uncovered claims that have been settled is "best proven by the insured, the party that has access to the evidence and the parties' intent behind the settlement process.") (quotation omitted).

[14]The 2018 Order states that Greenspon's damages for wrongful foreclosure totaled $11,578,767.00.   Dkt. No. 81-3 at 39 (¶4(b)).   Based upon the Court's calculation of the listed damages, the foregoing number in the 2018 Order is inaccurate.   Nonetheless, the $1 difference is irrelevant to the analysis herein.

foreclosure or, as the 2018 Order calculated it, "$34,736,302, together with costs of $55,500." In addition, the 2018 Order stated that Greenspon's damages for unfair and deceptive practices were "subsumed in the award for wrongful foreclosure…." *Id*. at 39. These findings in the 2018 Order are problematic for Greenspon *in this case* because, as discussed, at the very least, his claim for wrongful foreclosure is <u>not</u> covered under the Insurance Policy and, thus, neither are the damages (or loss) related to that claim. This means that <u>none</u> of the treble damages or costs awarded in the 2018 Order–the vast majority of the damages awarded–are covered under the Insurance Policy because those damages "are the sum total of the damages sustained for wrongful foreclosure[.]"

Finally, the only remaining damages in the 2018 Order are for various damages listed under a heading for "Reckless/Intentional Infliction of Emotional Distress." *See* Dkt. No. 81-3 at 37-38. These damages total $1,646,000.00. However, even with respect to these damages, Greenspon has failed to show that they relate entirely to a covered claim under the Insurance Policy. This is because in both the 2014 FAC and the 2018 Order, at least in part, the acts alleged to constitute unfair and deceptive practices are also acts that were alleged in the 2011 lawsuit. Notably, in the 2014 FAC, the claim for negligent or intentional infliction of emotional distress relies, in part, on the "foregoing acts and conduct…." 7/1/11 Compl. at ¶ 129. Those foregoing acts and conduct included the alleged wrongful

foreclosure, as well as numerous alleged unfair and deceptive acts or practices, including Cal-Western and Prommis Holdings allegedly "fabricat[ing]" the "Notice of Mortgagee's Intention to Foreclose Under Power of Sale," the "Mortgagee's Affidavit of Foreclosure Sale Under Power of Sale," and the "Mortgagee's Grant Deed Pursuant to Power of Sale."   *Id.* at ¶¶ 121(a), (g).   Those are the same alleged fabrications that were alleged in the 2011 lawsuit.   6/21/11 Compl. at ¶ 42. Similarly, in the 2018 Order, it is found that serious emotional distress was a foreseeable consequence of Cal-Western and Prommis Holdings' "unlawful acts, as they were intended to dispossess Plaintiff of his home…." Dkt. No. 81-3 at 38 (¶3(a)).   Those acts included wrongful foreclosure.   In this light, because the 2018 Order fails to differentiate between unlawful acts that were alleged in the 2011 lawsuit and those that Greenspon contends were first alleged in the 2014 lawsuit, such as a "mock" auction, he cannot carry his burden of showing that the damages for infliction of emotional distress relate to a covered claim under the Insurance Policy.   *See Sentinel Ins.*, 875 P.2d at 909 n.13; *Pancakes of Hawaii*, 944 P.2d at 89; *Royal Hawaiian Sales*, 27 Haw. at 335; *Puget Plastics*, 649 F. Supp. 2d at 650.

As a result, Greenspon cannot show that <u>any</u> of the commingled damages flowing from the commingled claims awarded in the 2018 Order are covered under the Insurance Policy.   Therefore, again, AIG is entitled to summary judgment, while Greenspon is not.

III. __Motion to Amend__

In his objection to the Magistrate Judge's order denying the motion to amend, Greenspon objects to the denial of leave to add a cause of action for unfair methods of competition and deceptive trade practices and a request for damages.   Dkt. No. 131 at 1-2.[15]

In his proposed amended complaint, Dkt. No. 90-4, as to unfair and deceptive practices by AIG, Greenspon alleges that, for purposes of the relevant statute, he is a "consumer" with respect to a construction loan from Indymac Bank.   He alleges that Prommis Solutions and Cal-Western unfairly and deceptively foreclosed on his property pursuant to the mortgage on the construction loan.   He also alleges that Prommis Solutions is insured by AIG and AIG "profited" from the collection of premiums paid on the Insurance Policy.   Greenspon further alleges that AIG owes him a duty of "honesty in the public interest," which it breached by failing to timely and adequately investigate his 2014 lawsuit and failing to offer a good faith settlement of the same.   *Id*. at ¶¶ 93-111.

To the extent this claim is not otherwise foreclosed by the Court's finding *supra* that the damages awarded in the 2014 lawsuit are not covered by the Insurance Policy, the Court agrees with the analysis of the Magistrate Judge in denying leave

---

[15]Because Greenspon does not object to the Magistrate Judge's denial of leave to add other causes of action or to allege claims against already dismissed defendants, this Court does not disturb the Magistrate Judge's findings in those regards, and nothing herein should be construed as doing so.

to add this claim, *see* Dkt. No. 123 at 11-13, and, thus, rejects Greenspon's objection.   More specifically, the Magistrate Judge found that, although Greenspon might arguably be a "consumer" of the construction loan he obtained, that loan does not form the basis of this case.   *Id*. at 12.   Rather, the basis of this case is the Insurance Policy.   *Id.*   Greenspon's objection to the contrary is unavailing.   First, Greenspon provides no support for the spurious contention that, by providing insurance to Prommis Solutions, AIG "participated" in Prommis Solutions' alleged acts.   *See* Dkt. No. 131 at 6.   Second, Greenspon's "personal investment in obtaining the Final Judgment" is similarly not the basis of this case.   *See id*. at 7-8. To repeat, this case is about the Insurance Policy−something to which Greenspon has no "personal investment" or other form of relationship.   Third, Greenspon entirely misconstrues Section 431:1-102.   Merely because he is a "member of the public" does not mean that he can bring an action against an insurance company. *See id*. at 8-9.   Rather, as the statute says, its purpose is to ensure "good faith" between the insurer and the insured−neither of which is Greenspon in relation to the Insurance Policy.   *See* Haw. Rev. Stat. § 431:1-102; *Best Place, Inc. v. Penn Am. Ins. Co.*, 920 P.2d 334, 346 (Haw. 1996) ("Accordingly, we hold that there is a legal duty, implied in a first- and third-party insurance contract, that the *insurer* must act in good faith in dealing with its *insured*, and a breach of that duty gives rise to an independent tort cause of action.") (emphasis added).   Finally, because Greenspon

has been denied leave to add any new claim against AIG, there is no basis to allow him to seek damages or punitive damages in this case.[16]

## IV.   **Other Pending Motions**

As discussed above, various other motions remain pending.   In light of the Court's grant of summary judgment in favor of AIG, denial of the same as to Greenspon, and rejection of Greenspon's objection to the Magistrate Judge's ruling, all of those remaining motions are moot.   Specifically, the need to defer ruling on Greenspon's motion, to compel discovery, and to continue trial are all unnecessary. In addition, because the Court has granted summary judgment on the basis of a lack of coverage under the Insurance Policy, there is no need for the Court to address AIG's second dispositive motion based upon the "Frow" doctrine or any other bases for summary judgment that are raised in AIG's first motion.

## **CONCLUSION**

For the reasons set forth herein, the Court:

(1) GRANTS in part and DENIES AS MOOT in part AIG's Motion for

Summary Judgment Re: Insurance Coverage, Dkt. No. 124;

---

[16]In his objection, Greenspon also appears to contend that he can bring a claim for unfair competition against AIG.   *See* Dkt. No. 131 at 3-5.   However, such a claim is not asserted in the proposed amended complaint, *see* Dkt. No. 90-4 at ¶¶ 93-111, and, thus, Greenspon has not alleged the "nature of the competition" as he contends.   *See id*.   In any event, Greenspon provides no explanation as to how any purported injury he has suffered was the result of actions that negatively affected competition.   *See* Dkt. No. 131 at 3-5; *see also Davis v. Four Seasons Hotel Ltd.*, 228 P.3d 303, 318 (Haw. 2010) (explaining that a plaintiff bringing an unfair competition claim is required to allege that he was "harmed as a result of the actions of the defendant that negatively affect competition….").

(2) DENIES Greenspon's Amended Motion for Partial Summary Judgment, Dkt. No. 84;

(3) DENIES AS MOOT AIG's Motion for Summary Judgment Re: Frow Doctrine, Dkt. No. 126;

(4) GRANTS Greenspon's Ex Parte Motion for Extension of Time to File Responses, Dkt. No. 136;

(5) DENIES AS MOOT AIG's motions to (A) compel and amend the Rule 16 scheduling order, Dkt. No. 91, (B) continue trial and related deadlines, Dkt. No. 105, and (C) deny or alternatively defer Greenspon's amended motion for partial summary judgment, Dkt. No. 112; and

(6) REJECTS Greenspon's objection to the Magistrate Judge's February 11, 2020 Order, Dkt. No. 131.

Finally, because AIG is entitled to summary judgment herein, and there being no remaining claims or defendants,[17] the Clerk is ORDERED to enter Judgment in favor of all defendants, and then close this case.

---

[17] On May 17, 2019, the Court dismissed without prejudice defendants American International Group, Inc. and McCorriston Miller Mukai MacKinnon LLP, providing Greenspon leave to amend his claims against those entities by June 7, 2019. Dkt. No. 56. Greenspon did not amend his claims against those entities by June 7, 2019, and, thus, they are deemed dismissed pursuant to the Court's May 17, 2019 Entering Order. The only other potential defendant in this case is Prommis Solutions. In the Complaint, Prommis Solutions is listed as a defendant in the case caption. Dkt. No. 1-2 at 1. However, Prommis Solutions is not named as a defendant in the "Parties" section of the Complaint, *see id.* at ¶¶ 1-4, and no claim is alleged against Prommis Solutions therein, *see generally id.* There is also no indication that Prommis Solutions has been served. In this light, to the extent Prommis Solutions was meant to be a defendant in this case, it is hereby dismissed.

IT IS SO ORDERED.

DATED: April 20, 2020 at Honolulu, Hawai'i.

Derrick K. Watson
United States District Judge