Michael C. Greenspon, *pro se*
1135 Makawao Ave Ste 103 #321
Makawao, HI 96768
t (510) 502-2503
mcg@mauinetworks.com

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MICHAEL C. GREENSPON,<br>    Plaintiff,<br><br>    vs.<br><br>AIG SPECIALTY INSURANCE CO F/K/A CHARTIS SPECIALTY INSURANCE CO.; AMERICAN INTERNATIONAL GROUP, INC.; PROMMIS SOLUTIONS HOLDING CORP. N/K/A OLD ALABAMA CLOSING CORP.; MCCORRISTON MILLER MUKAI MACKINNON LLP; DOES 10-30.<br><br>    Defendants. | CIVIL NO. 18-00448-DKW-WRP<br><br>**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL RECONSIDERATION OF FINAL ORDER 1) GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT RE: INSURANCE COVERAGE AND 2) DENYING PLAINTIFF'S MOTION FOR LEAVE TO AMEND** |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL RECONSIDERATION OF FINAL ORDER 1) GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT RE: INSURANCE COVERAGE AND 2) DENYING PLAINTIFF'S MOTION FOR LEAVE TO AMEND**

1. <u>Summary Judgment</u>

Plaintiff respectfully requests partial reconsideration of the Court's April 20, 2020 Final Order [142] ("2020 Order") that grants in part summary judgment to

Defendant insurer AIG on the issue of coverage on its 2012 D & O tail Policy for Plaintiff's claims arising from a Hawaii state court 2014 Lawsuit and resulting 2018 Order (Final Judgment) awarding Plaintiff damages based on the acts of AIG's insureds "Prommis Solutions" and "Cal-Western".

The 2020 Order adjudicated cross-motions for summary judgment, i.e. Plaintiff's MPSJ [84] and AIG's MSJ [124], regarding coverage. The 2020 Order considered only four documents as relevant: a 2011 Complaint; the 2014 Complaint; the 2018 Order; and the Policy. Dkt. 142 at 1-2. The 2020 Order concludes that the claims resulting in damages awarded by the 2018 Order were "first made" by the 2011 Lawsuit and thus outside the relevant Policy period. *Id.*

Although the 2020 Order concedes that "The [2018 Order] do[es] not show which (if any) of the damages awarded to [Plaintiff]" *may be* "first made" "*during* the relevant policy period", *Id.*, it concludes "As a result, [Plaintiff] *cannot* show that any commingled damages flowing from the commingled claims awarded in the 2018 Order are covered under the Insurance Policy." *Id.* at 27.

Thus, there is a genuine issue of material fact as to what damages awarded to Plaintiff may be shown to "flow" from the claims that were, in fact, "first made" by Plaintiff's claim based on the Final Judgment. Therefore, summary judgment for movant AIG on its MSJ was inappropriate at this stage of the proceeding.

The conclusion that Plaintiff "*cannot* show" any damages resulting from claims "first made" by the 2014 Lawsuit relies on a literal textual analysis of the 2018 Order rather than on any evidence of record, including evidence from the underlying 2014 Lawsuit on which the 2018 Order is based, that *could be* shown at trial or on further motion. However, even that textual level of analysis overlooks the particular wording and structure of the 2018 Order, and particularly the <u>timing</u> of the multiple <u>independent negligent acts of Cal-Western resulting in damages</u> to Plaintiff.

The 2018 Order, Dkt. 81-3 at 26-28, concluded that the 2014 Lawsuit FAC and its Count IV, "Breach of Fiduciary Duty", "states a claim for wrongful foreclosure based both on IndyMac's repudiation of the loan modification and forbearance agreement accepted by Plaintiff, as well as on Cal-Western's unlawful <u>conduct of the non-judicial foreclosure process and auction sale</u>." *Id.* COL ¶6. Thus, the 2018 Order relevantly identifies the "wrongful foreclosure" as consisting of those acts *during* the *process* conducted by Cal-Western <u>up to and including the 2010 auction sale and recording of the deed</u>, *Id.* COL ¶¶7-12.

In awarding UDAP damages pursuant to § 480-2, the 2018 Order, Dkt. 81-3 at 38-39, ¶4a, likewise concludes that the "entire non-judicial foreclosure process in this case" spans the period from the time of "recording of the sale notice on May 22, 2009, <u>through the recording of the … deed on May 7, 2010</u>".

3

The 2018 Order, *Id.* at 29-30, then *distinguishes* those "breaches of duty" alleged by the 2014 Lawsuit FAC, separate from the acts of "wrongful foreclosure", that were found and concluded to be breaches of a <u>duty to disclose</u> the facts of the sale and constituted independent negligent misrepresentations of Cal-Western. *Id.* COL ¶18-19.

The 2018 Order also found that Cal-Western, *after service* of the 2011 Complaint, intentionally or recklessly misrepresented, by and through its counsel, its authorization to have acted as agent of the FDIC, and allowed its counsel to conceal its knowledge of its lack of such authorization. *Id.* at 30-31, COL ¶20-21. Particularly, the 2018 Order concludes that "<u>Because of Cal-Western's concealment</u>, Plaintiff suffered an adverse summary judgment for possession of his home". *Id.* at 31, COL ¶22.

Thus, the 2018 Order clearly concludes that it was Cal-Western's <u>misrepresentations and concealments</u> after and distinguished from the 2010 wrongful foreclosure itself, and *after the 2011 Complaint*, <u>that caused Plaintiff to suffer damages</u>, including the adverse March 13, 2013 judgment of possession that he successfully appealed. Substantially all of the damages awarded in fact "flow" from that adverse judgment of possession and the litigation leading up to it, subsequent to the 2011 Complaint, as that comprises the bulk of the time period from 2009-2016, and includes the period of Plaintiff's claimed business loss.

4

Clearly, if Cal-Western's counsel[1] had conceded its knowledge in its August 30, 2011 Answer to the 2011 Complaint, Plaintiff would have prevailed and/or settled the litigation as of that date and would have been spared an additional five years of harm, through the August, 2016 resolution of the appeal. Thus, the independent acts of misrepresentation by Cal-Western as found by the 2018 Order are an <u>intervening cause</u> of the damages, and so there is a genuine issue of material fact as to which of the damages awarded by the 2018 Order are ascribable to the claims "first made" by Plaintiff's April 11, 2018 claim for indemnification on the Policy. Thus, summary judgment was improper.

The 2018 Order, Dkt. 81-3 at 36, concludes that "<u>Compensatory damages</u> are available <u>for each of Plaintiff's claims</u> of wrongful foreclosure, <u>breach of duty, negligent/reckless and intentional misrepresentation, unfair and deceptive acts and practices</u>". Although the 2018 Order inaccurately formats its list of awarded economic damages under the heading "wrongful foreclosure", that list clearly includes damages that arose *after* the completion of the foreclosure process and

---

[1] The evidence of the complete knowing course of concealment by Cal-Western's counsel is of record in the 2014 Lawsuit, e.g., ex. 0990 therein, and is excerpted in the summary judgment record herein as attached to Plaintiff's MPSJ filings, e.g. <u>Ex. 30</u>, Dkt. 115-8; *see Decl.* Dkt. 115-1 at 4-5, ¶7-8. That evidence shows that on August 18, 2011, Cal-Western discussed and formulated a plan to conceal its lack of authorization by the FDIC and also to fabricate and record new "amended deeds" in the name of the FDIC in order to obtain possession of Plaintiff's home.

2011 Complaint as aforesaid. The perpetuation of those damages on and after August 30, 2011 are thus the result of Cal-Western's independent acts of misrepresentation. Thus, there is a triable issue regarding how the damages flowing from Cal-Western's misrepresentations are to be apportioned after that date.

The 2018 Order's award of UDAP damages, Dkt. 81-3 at 38-38 ¶4, is consistent with the foregoing analysis. *Id.* ¶ 4c specifically concludes only that "Cal-Western's reckless misrepresentations <u>with respect to the sale notice and Mortgagee's Affidavit</u> on and after May 22, 2009 are already subsumed in the award for wrongful foreclosure". That does not imply that damages for all of the <u>acts of misrepresentation subsequent to the 2011 Complaint</u> as aforesaid were "subsumed". Rather, each of the compensatory economic damages are trebled, whether due to the "wrongful foreclosure" or the subsequent concealments.

That the damages can be apportioned on a straightforward timeline is shown by the fact that the awarded damages due to the impairment of Plaintiff's sweat equity in the property are calculated as net of the mortgage prior to <u>September 15, 2011</u>, and as unencumbered by the foreclosed and settled mortgage subsequent to that date. Dkt. 81-3 at 36, ¶ 2b ("This resulted in total damages of $2,777,084 consisting of $414,189 during 846 days prior to … September 15, 2011… and

$2,362,395 <u>during 2,297 days subsequent thereto</u>.") This is a close approximation[2] of those damages subsequent to <u>August 30, 2011</u> (2,312 days.)

Similarly, damages due to loss of Plaintiff's earnings and wages, Dkt. 81-3 at 37, ¶ 2h, over 8 years is readily apportionable to those periods prior to and subsequent to August 30, 2011. And, all of the economic loss of Plaintiff's startup business and competitive advantage, *Id.* ¶ 2i, arose after August 30, 2011.

The foregoing shows a genuine issue of material fact and evidence that there are covered claims of damages "first made" during the Policy period. Thus, Plaintiff respectfully requests that the Court set aside its April 20, 2020 order as to AIG's summary judgment.

2. <u>Leave to Amend</u>

Plaintiff likewise respectfully requests the Court reconsider granting leave to amend to include a UDAP and/or bad faith claim as to AIG's handling of this

---

[2] The 2018 Order's arithmetic is in fact accurate. The spreadsheet schedule that is the basis of the Order calculated subtotal damages amounts to the penny, but rounded them to the nearest dollar for ease of presentation. The actual figures comprising the economic damages, Dkt. 81-3 at 36-37 ¶2, are (b) $414,188.71 and $2,362,895.04; (c) $868,140.77; (d) $333,181.82; (e) $707,000.00; (f) $66,200.00; (g) $350,311.65; (h) $2,364,257.47 and $1,112,591.75; and (i) $3,000,000.00. These total $11,578,767.22 that is represented by the 2018 Order as $11,578,767. The schedule is in the public record of AIG's pending state court appeal in the ICA as CAAP-19-0000551, Plaintiff/Appellee's Answer Brief, dkt #121 Appendix C.

matter. Whether a third-party consumer creditor of a wound-up insured can bring a claim against the D & O insurer on a tail policy that AIG knew would likely result in a judgment is a matter of first impression in Hawaii law and so it would be in the public interest that the Hawaii Supreme Court rule on the question rather than asking this Court or the 9th Circuit to guess how it would rule in light of the changing pandemic economic conditions and evolution of the law. *Cf. Donaldson v. Liberty Mut. Ins. Co.*, 947 F. Supp. 429 (D. Haw. 1996).

 Particularly, Plaintiff is a consumer with respect to the construction loan transaction that is the basis of the judgment against the wound-up insured. That judgment is the basis of the instant action as much as the insurance policy. Plaintiff stands in the shoes of the insured by virtue of the judgment and so has standing to bring a UDAP claim or, alternately, a bad faith claim, as to the insurer.

 Wherefore, Plaintiff respectfully requests that the denial of leave to amend be set aside so as to test the matter and that a question may be certified to the Hawaii Supreme Court.

 DATED: May 20, 2020, Haʻiku, Hawaiʻi, and respectfully submitted,

      /s/Michael C. Greenspon
      Plaintiff, *pro se*

# CERTIFICATE OF SERVICE

The undersigned certifies that the above-entitled document **PLAINTIFF'S MOTION FOR PARTIAL RECONSIDERATION OF FINAL ORDER 1) GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT RE: INSURANCE COVERAGE AND 2) DENYING PLAINTIFF'S MOTION FOR LEAVE TO AMEND; MEMORANDUM** is served on the opposing parties in this action via their counsel of record electronically via CM/ECF on the indicated date:

> TERRENCE J. O' TOOLE  #1209
> MAILE S. MILLER  #10179
> JOHN W. KELLY #9907
> STARN O'TOOLE MARCUS & FISHER, ALC
> Pacific Guardian Center, Makai Tower
> 733 Bishop Street, Suite 1900
> Honolulu, Hawaii 96813
>   Attorneys for Defendant
>   AIG SPECIALTY INS. CO.

DATED: May 20, 2020, Haʻiku, Hawaiʻi

                                       /s/ Michael C. Greenspon
                                       Michael C. Greenspon